# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VALERIIA BORZENKOVA,<br><br>PLAINTIFF,<br><br>v.<br><br>T-MOBILE US, INC.,<br><br>DEFENDANT. | Index No. 1:24-cv-3070<br><br>**<u>COMPLAINT</u>** |

Plaintiff Valeriia Borzenkova, on behalf of herself and all others similarly situated, by and through her undersigned counsel, based upon information and belief as well as the investigation of counsel, brings the following Class Action Complaint against Defendant T-Mobile US, Inc. ("Defendant" or "T-Mobile").

## I.    NATURE OF THE ACTION

1.    This lawsuit arises from T-Mobile's unlawful use of biometric data to benefit its bottom line. T-Mobile improperly uses the biometric data it collects from consumers to secure their stores, rather than paying for security guards or other security measures, as well as to prevent fraud.

2.    Although these purposes may seem innocuous, they are unlawful. As set forth in this complaint, T-Mobile's profit-motivated use of its facial recognition, eye scan, and voiceprint technology systems violates the protected and valuable privacy rights of all consumers in their unique and personal biometric identifier information, in accordance with New York City law.

3.    T-Mobile is one of the largest mobile phone service providers in the world, with brick-and-mortar locations throughout New York City. According to its

Prospectus, "[a]s of September 30, 2023, [T-Mobile] provide[s] wireless communications services to 117.9 million postpaid and prepaid customers[.]"

4.     T-Mobile has implemented a facial recognition, eye scans, and voiceprint technology systems that collect and analyze biometric identifiers from each person that enters its premises, and uses this information for loss prevention, generating profits by reducing the number of stolen goods.

5.     In 2021, New York City joined a number of other states and municipalities that have enacted laws to prevent commercial establishments from surreptitiously collecting and profiting from consumer biometric identifiers, as T-Mobile has done. *See* N.Y.C. Admin Code §§ 22-1201–1205 (the "NYC Biometrics Law").

6.     T-Mobile's clear object to protect its store and company from theft and fraud is a financial benefit to T-Mobile, which is accomplished by and through collecting, analyzing, and sharing consumers' biometric data. T-Mobile engages in this conduct to reap the substantial profits attendant to mitigating losses in its brick-and-mortar locations, by reducing the number of stolen goods. This profit from consumers' biometric identifiers falls squarely within the conduct prohibited by the NYC Biometrics Law.

7.     Plaintiff brings this Action, on behalf of herself and all others similarly situated, to vindicate the privacy rights of all persons who visited the T-Mobile locations in New York City and had their biometric identifier information collected by T-Mobile facial recognition, eye scan, and voiceprint technology systems during the period commencing July 9, 2021, and ending on the earlier of the date of entry of judgment in this Action or on the date T-Mobile ceases to engage in the unlawful

practices complained of herein. Plaintiff seeks actual damages; statutory monetary damages pursuant to N.Y.C Admin. Code § 22-1203 for each of T-Mobile's negligent, intentional, and/or reckless violations of N.Y.C Admin. Code § 22-1202(b) with respect to each Class member; reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses incurred by Plaintiff in connection with this Action, as provided by N.Y.C Admin. Code § 22-1203; and such other and further relief, as the Court may deem appropriate, including an injunction prohibiting T-Mobile's continued violations of the NYC Biometrics Law, together with pre- and post-judgment interest.

## II.    JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this Action (1) involves thousands of putative class members; (2) there is minimal diversity between at least one member of the putative Class and the Defendant, and (3) in the aggregate, the claims of Plaintiff and the putative Class exceed the sum or value of $5,000,000, exclusive of costs and interest.

9.      This Court has personal jurisdiction over Defendant because it maintains offices in New York, New York. This Court also has personal jurisdiction over Defendant because the events giving rise to this action occurred in New York, New York. Thus, Defendant has continuous and systematic contacts with the State of New York, availing itself to the laws of New York.

10.     Venue is proper in this Court under 28 U.S.C. § 1391, because Defendant maintains offices in this District. Additionally, the conduct giving rise to the allegations and claims asserted in this Action originated and occurred in this District.

### III.    PARTIES

11.    Plaintiff Valeriia Borzenkova is a resident of New York state. Plaintiff has visited many T-Mobile location, and her biometric information was collected, retained, converted, and/or stored at least at the T-Mobile locations at 125 Maiden Lane, New York, New York, 10038, on July 10, 2023; at 307 Madison Avenue, New York, New York, 10017, on October 10, 2023; and 485 Madison Avenue, New York, New York 10022, on December 9, 2023.

12.    Plaintiff did not provide consent, written or otherwise, to Defendant to sell, lease, trade, or share in exchange for anything of value or otherwise profit from the transaction of her biometric identifier information, or otherwise use any such information for the purposes of trade.

13.    Defendant T-Mobile is a Delaware corporation, registered with the New York Secretary of State. Its principal executive offices are located at 12920 SE 38th Street, Bellevue, WA.

### IV.    FACTUAL ALLEGATIONS

14.    As discussed herein, certain T-Mobile locations in New York City employ facial recognition, eye scan, and voiceprint technology to collect biometric data from their patrons.

15.    Biometrics are biological or physiological characteristics that may be used individually or in combination to identify an individual. Biometric identifiers include the iris and retina of the eye, facial geometry, hand geometry, and the fingerprint. *See* N.Y.C. Admin. Code § 22-1201 (defining "Biometric identifier information" under New York City law).

16.    The statute defines "biometric identifier information" as "a physiological or biological characteristic that is used by or on behalf of a commercial establishment, singly or in combination, to identify, or assist in identifying, an individual, including, but not limited to: (i) a retina or iris scan, (ii) a fingerprint or voiceprint, (iii) a scan of hand or face geometry, or any other identifying characteristic." N.Y.C. Admin Code § 22-1201. A "commercial establishment" is defined as "a place of entertainment, a **retail store,** or a food and drink establishment." *Id.* (emphasis added)

17.    Biometric technology collects biometric data, and uses that information to identify or recognize a person based upon a biometric identifier. Biometric recognition technology such as that used at the T-Mobile locations is a type of technology that analyzes facial features to identify a person by detecting her face.

18.    T-Mobile has deployed facial recognition, eye scan, and voiceprint technologies to collect and use biometric data for profit-motivated, commercial purposes in violation of the consumer privacy rights conferred by the NYC Biometrics Law, including loss prevention, which generates profits by reducing the number of stolen goods.

19.    T-Mobile has used the collection of biometric data from consumers for its own pecuniary benefit. The purposes, intent, and result of this collection, including security, loss prevention, and fraud detection, provide a financial benefit to T-Mobile, by reducing the number of stolen goods and preventing fraud, and thereby increasing profits. However, the purpose of Section 22-1202(b) is to prevent corporations from using consumer biometric data for the corporation's own pecuniary benefit, just as T-Mobile is doing here.

20. T-Mobile states as follows about its collection of biometric information:

> T-Mobile cares about the security of your personal information and wants to protect you and us against fraud. Where permitted by law, T-Mobile and our contractors ("we", "us") use ID scanning and facial recognition technology to verify your identity and safeguard personal information as part of our security and fraud prevention efforts. This notice describes our collection and use of biometric data for these security and fraud prevention purposes. When we refer to "biometric data," we mean information about your physical or biological characteristics (some states call these "biometric identifiers") that identify you. Information like eye, hand, or face scans; fingerprints; and voiceprints may be considered biometric data if they are being used to identify you. The definitions of biometric data vary under different states' laws. For example, some states' biometric laws don't apply to driver's license photos. Photos of you are not biometric data, but biometric data can be made from processing the photo.

## V.  CLASS ALLEGATIONS

21. Plaintiff, pursuant to Federal Rules of Civil Procedure 23(b) and 23(c) seeks to certify a class consisting of consumers who fall under the following definition ("Class Members" or the "Class"):

> **Class Definition.** All persons who visited a T-Mobile in New York City and had their biometric identifier information collected by Defendant's biometric recognition technology system during the period commencing July 9, 2021, and ending on the earlier of the date of entry of judgment in this Action or on the date T-Mobile ceases to engage in the unlawful practices complained of herein.

22. Excluded from the Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant.

23. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class-wide basis using the

same evidence as would be used to prove those elements in individual actions alleging the same claims.

24. **Numerosity.** The members of the Class are so numerous that individual joinder of all Class Members is impracticable. Class Members number in the thousands. The precise number or identification of members of the Class are presently unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

25. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting individual members of the Class. These common questions of law or fact include, but are not limited to, the following:

    a. whether Defendant collected biometric identifier information from customers;

    b. whether Defendant leased, traded, shared in exchange for anything of value, or otherwise profited from the transaction of biometric identifier information;

    c. whether Defendant violated N.Y.C. Admin Code § 22-1202(b);

    d. whether any such violation of N.Y.C. Admin Code § 22-1202(b) was negligent, reckless, and/or intentional;

    e. whether Defendant used photographic biometric identifier information for trade purposes; and

  f. whether Plaintiff and the Class are entitled to actual damages, statutory

damages, exemplary damages, and/or injunctive relief.

  26. Defendant engaged in a common course of conduct giving rise to the legal

rights sought to be enforced by Plaintiff, on behalf of herself and the other Class

Members. Similar or identical statutory and common law violations, business practices,

and injuries are involved. Individual questions, if any, pale by comparison, in both

quality and quantity, to the numerous common questions that dominate this action.

  27. **Typicality.** Plaintiff's claims are typical of the claims of the other Class

Members because, among other things, all such claims arise out of the same wrongful

course of conduct engaged in by Defendant in violation of law as complained of herein.

These harms include and are not limited to (i) having their biometric identifier

information collected, retained, converted, stored, and/or shared without their

knowledge, consent, or compensation, (ii) losing the ability and power to make informed

decisions about the collection, retention, conversion, storage, sharing, and use of their

biometric information, (iii) having their privacy rights and interests violated, including

by creating a risk that their biometric information will be misused or shared by

T-Mobile, and other parties with which T-Mobile transacts business, and (iv) having

T-Mobile profit from the collection, retention, conversion, storage, and sharing of their

biometric information without providing them just compensation. Further, the damages

of each Class Member were caused directly by Defendant's wrongful conduct in

violation of the law as alleged herein.

  28. **Adequacy of Representation.** Plaintiff is an adequate representative of

the Class because Plaintiff is a member of the Class and Plaintiff's interests do not

conflict with the interests of the Class Members she seeks to represent. Plaintiff has retained counsel competent and experienced in complex commercial and class action litigation. Plaintiff and her counsel intend to prosecute this action vigorously for the benefit of all Class Members. Accordingly, the interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

29.     **Superiority and Manageability.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I

**Violation of New York City Biometric Identifier Information Protection Code
N.Y.C. Admin. Code § 22-1202(b)**

30.     Plaintiff restates and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

31.     Defendant owns and operates multiple T-Mobile locations in New York City, which are commercial establishments subject to N.Y.C. Admin Code § 22-1202.

32.     Defendant employs biometric collection technology systems at the T-Mobile locations, which collects, retains, converts, analyzes, stores, and/or shares biometric identifier information, including facial recognition, eye scans, and voiceprints, of persons who enter each T-Mobile location, including Plaintiff and members of the proposed Class.

33.     Defendant has used, shared, transferred, or otherwise transacted in biometric identifier information associated with consumers, such as Plaintiff and members of the proposed Class, for loss prevention purposes.

34.     Defendant profits from the biometrics collection by deriving pecuniary benefits from deterring shoplifting and other means of loss prevention.

35.     This collection of biometric data violates N.Y.C. Admin Code § 22-1202(b).

36.     Defendant has acted willfully and recklessly, or, alternatively, negligently, in profiting from using, sharing, or transacting in consumer biometric identifier information to implement and carry out its loss prevention program.

37.     Plaintiff, and members of the proposed Class, have been damaged by Defendant and are entitled to actual and statutory damages, as provided by N.Y.C. Admin Code § 22-1203, for each of Defendant's violations of N.Y.C. Admin Code § 22-1202(b).

## REQUEST FOR RELIEF

38.     WHEREFORE, Plaintiff requests that judgment be entered as follows:

    a.  an Order certifying this Action as a class action and appointing Plaintiff as class representatives, and her counsel as class counsel;

b.  statutory damages awardable under N.Y.C. Admin Code § 22-1203, for

Defendant's negligent, intentional and/or reckless violations of N.Y.C.

Admin Code § 22-1202(b) with respect to each Class member;

c.  for equitable relief;

d.  attorneys' fees, costs, including as provided by N.Y.C. Admin Code

§ 22-1203;

e.  equitable and injunctive relief ordering Defendant to cease the unlawful

practices described herein, including Defendant's continued violations of

N.Y.C. Admin Code § 22-1202(b);

f.  other damages to be awarded in an amount to be determined as allowable

by law, including pre- and post-judgment interest; and

g.  such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

39.   Plaintiff hereby demands a jury trial for all claims so triable.

Dated: April 22, 2024                        Respectfully submitted,

/s/ *Anna Menkova*
Anna Menkova
Adam Pollock
POLLOCK COHEN LLP
111 Broadway, Suite 1804
New York, NY 10006
Tel: (212) 337-5361
anna@pollockcohen.com
adam@pollockcohen.com